**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

Case No.  **CV 20-1414-JFW(JEMx)**                                    Date:  December 3, 2020

Title:   Zafer G. Kridi  -v- Mark Koumans, et al.

**PRESENT:**

   **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

   **Shannon Reilly**                                              **None Present**
   **Courtroom Deputy**                                       **Court Reporter**


**ATTORNEYS PRESENT FOR PLAINTIFFS:**       **ATTORNEYS PRESENT FOR DEFENDANTS:**
                None                                                                                None

**PROCEEDINGS (IN CHAMBERS):**        **ORDER DENYING DEFENDANTS' MOTION FOR**
                                                                   **SUMMARY JUDGMENT**
                                                                   **[filed 11/9/2020; Docket No. 45];**

                                                                   **ORDER GRANTING PLAINTIFF'S MOTION FOR**
                                                                   **SUMMARY JUDGMENT**
                                                                   **[filed 11/16/2020; Docket No. 46]**

    On November 9, 2020, Defendants Mark Koumans, Deputy Director of U.S. Citizenship and Immigration Services; Robert A Sanders, Field Office Director of the San Fernando Valley Field Office of U.S. Citizenship and Immigration Services; Nicola T. Hanna, U.S. Attorney for the Central District of California; and William P. Barr, the U.S. Attorney General (collectively, "Defendants") filed a Motion for Summary Judgment. On November 16, 2020, Plaintiff Zafer G. Kridi ("Plaintiff") filed a Motion for Summary Judgment, which the Court also construes as an Opposition to Defendants' Motion for Summary Judgment.  On November 23, 2020, Defendants filed a Reply in Support of Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment.[1]  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that these matters are appropriate for decision without oral argument.  The hearing calendared for December 7, 2020 is hereby vacated and the matters taken off calendar. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

---

[1] Although Plaintiff's Motion for Summary Judgment is untimely pursuant to Local Rule 6-1, the Court finds that the issues have been fully briefed and presented to the Court and that no additional briefing is necessary.  Accordingly, the Court will consider and rule on Plaintiff's Motion for Summary Judgment.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Zafer G. Kridi is a native and citizen of Syria who entered the United States without inspection on July 20, 2003. Following his entry into the United States without inspection, Plaintiff applied for Temporary Protected Status ("TPS"). On December 4, 2012, U.S. Citizenship and Immigration Services ("USCIS") approved Plaintiff for TPS.

After Plaintiff was approved for TPS, he filed a Form I-485, Application to Register Permanent Status or Adjust Status ("I-485 Application"),[2] based upon the approved Form I-130, Petition for Alien Relative ("I-130 Petition"),[3] of his U.S. citizen brother, Samer G. Kridi. On August 19, 2019, USCIS interviewed Plaintiff in connection with his I-485 Application. On August 21, 2019, USCIS issued to a Notice of Intent to Deny Plaintiff's I-485 Application, to which Plaintiff responded in writing.

On October 18, 2019, USCIS issued its decision denying Plaintiff's I-485 Application. The USCIS determined that Plaintiff did not satisfy the statutory requirement for adjustment of status through his U.S. citizen brother as a preference-based applicant under 8 U.S.C. § 1255(c)(2) because Plaintiff was not in lawful status between July 20, 2003, the date he entered the United States without inspection, and December 4, 2012, the date he received TPS.

On February 20, 2020, Plaintiff filed this action seeking declaratory relief under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.* Defendants filed and served the Certified Administrative Record on October 19, 2020. The parties filed cross-motions for summary judgment.

II.   **STATUTORY AND REGULATORY FRAMEWORK**

   A.   **Legal Standards Governing Applications for Adjustment of Status**

The basic requirements for adjustment of status are set forth in 8 U.S.C. § 1255(a) which provides, in pertinent part, that:

> The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if:

---

[2]The I-485 application is used to adjust U.S. immigration status to lawful permanent resident, commonly known as obtaining a "green card," and may be based on, *inter alia*, a family relationship (through an approved I-130 petition, as is the case here), employment, or asylum or refugee status.

[3]The I-130 petition is used to establish that a valid family relationship exists between a U.S. citizen or lawful permanent resident and a person seeking to establish status in the United States as a lawful permanent resident. The filing or approval of the I-130 petition does not provide the intended beneficiary with U.S. immigration status or other benefit. *See Agyeman v. I.N.S.*, 296 F.3d 871, 879 (9th Cir. 2002).

>   (1)   the alien makes an application for such adjustment
>   (2)   the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and
>   (3)   an immigrant visa is immediately available to him at the time his application is filed.

Defendants do not dispute that Plaintiff meets the requirements set forth in 8 U.S.C. § 1255(a).

Section 1255(c), however, identifies certain situations in which an individual is not eligible for adjustment of status under section 1255(a). In particular, section 1255(c) provides that "[adjustment of status under section 1255(a)] shall *not* be applicable to" anyone who falls into one of eight categories. 8 U.S.C. § 1255(c) (emphasis added). Most importantly, as relevant to this case, the second of these eight categories provides that the following individuals are not eligible to adjust under subsection (a):

> . . . an alien (other than an immediate relative defined in section 1151(b) or a special immigrant described in section 1101(a)(27)(H), (I), (J), or (K)) . . . *who has failed (other than through no fault of his own or for technical reasons) to maintain continuously a lawful status since entry into the United States.*

8 U.S.C. § 1255(c)(2) (emphasis added). In other words, section 1255(c)(2) provides that, unless the applicant is seeking adjustment of status based on an immediate relative petition (or a certain class of immigrant not applicable here),[4] the applicant must have "maintain[ed] continuously a lawful status since entry into the United States" in order to be eligible for adjustment of status under 8 U.S.C. § 1255(a).

### B.   Legal Standard Governing Temporary Protected Status

Temporary Protected Status ("TPS") provides temporary relief to nationals of designated foreign countries who are present in the U.S. and unable to safely return to their home country due to ongoing armed conflict, environmental disaster, or "other extraordinary and temporary conditions in the foreign state." 8 U.S.C. § 1254a(b); *Ramos v. Wolf*, 975 F.3d 872, 879 (9th Cir. 2020). TPS designees are ineligible for removal from the United States (8 U.S.C. § 1254a(a)(1)(A)), but they "shall not be considered to be permanently residing in the United States under color of law" (8 U.S.C. § 1254a(f)(1)). In 2012, Syria was designated for TPS, and it continues to remain designated for TPS. *Designation of Syrian Arab Republic for Temporary Protected Status*, 77 Fed. Reg. 19026-01 (March 29, 2012); *Extension of the Designation of Syria for Temporary Protected Status*, 84 Fed. Reg. 49751-01 (Sept. 23, 2019).

The TPS statute specifies the alien's "[b]enefits and status during [a] period of temporary protected status." 8 U.S.C. 1254a(f). Importantly for purposes of this case, the TPS statute provides that:

---

[4]Immediate relatives are defined as "the children, spouses, and parents of a citizen of the United States…." 8 U.S.C. § 1151(b)(2)(A)(i). A sibling is not an "immediate relative" as defined by U.S. immigration laws. *Id.*

> During a period in which alien is granted temporary protected status under this section-
>
> ***
>
> (4) for purposes of adjustment of status under section 1255 of this title and change of status under section 1258 of this title, the alien shall be considered as being in, and maintaining, lawful status as a nonimmigrant.

8 U.S.C. 1254a(f)(4). In other words, the alien is considered as being in and maintaining lawful status during the TPS period. *Id.*

## III.   STANDARD OF REVIEW

### A.   Judicial Review Under the Administrative Procedure Act

Plaintiff brings this action under the mandamus statute, 28 U.S.C. § 1361; the Declaratory Judgment Act, 28 U.S.C. § 2201; the Court's general federal-question jurisdiction, 28 U.S.C. § 1331; and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-06.  Compl. ¶ 4.  Because review under the APA is adequate, the Court need not consider the other statutes.  *Figueroa v. Rodriguez*, 2017 WL 3575284, *2 (C.D. Cal. Aug. 10, 2017).

The Administrative Procedures Act ("APA") provides for judicial review of final agency decisions.  *See* 5 U.S.C. §§ 702, 706. Under the APA, a reviewing court may only set aside a final agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). The standard under the APA is "highly deferential, presuming the agency action to be valid." *Kern Cnty. Farm Bureau v. Allen*, 450 F.3d 1072, 1076 (9th Cir. 2006) (quoting *Indep. Acceptance Co. v. California*, 204 F.3d 1247, 1251 (9th Cir. 2000)).

An agency decision is "arbitrary and capricious" when "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Beno v. Shalala*, 30 F.3d 1057, 1073 (9th Cir. 1994) (*quoting Motor Vehicle Mfr. Ass'n v. State Farm Ins.*, 463 U.S. 29, 44 (1983)).  Under this "narrow" standard of review, the court "is not to substitute its judgment for that of the agency," and must "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513-14 (2009).  An agency does not violate the arbitrary and capricious standard where it articulates "a rational relationship between its factual findings and its decision." *Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1132 (9th Cir. 2010).

Courts routinely resolve APA challenges to an agency's administrative decision by summary judgment. *See Nw. Motorcycle Ass'n v. U.S. Dept. of Agric.*, 18 F.3d 1468, 1481 (9th Cir. 1994). In cases, such as this, involving review of a final agency action under the APA, summary judgment serves as the mechanism for deciding, as a matter of law, whether agency action is supported by the administrative record and otherwise consistent with the APA standard of review. *See Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006) (citations omitted).

### B.  Review of an Agency's Interpretation of a Statute in APA Cases

If agency action turns on a question of statutory interpretation, the reviewing court's analysis follows the two-step process established in *Chevron U.S.A., Inc., v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *Wilderness Society v. U.S. Fish & Wildlife Service*, 353 F.3d 1051, 1059 (9th Cir. 2003).  First, the Court examines "whether Congress has directly spoken to the precise question at issue."  *Chevron*, 467 U.S. at 842-43. If the Court determines that the "intent of Congress is clear, that is the end of the matter; for the court, as well as the agency must give effect to the unambiguously expressed intent of Congress." *Id.*; *see also Wilderness Society*, 353 F.3d at 1059.

At step two, "if a statute is silent or ambiguous with respect to the issue at hand, then the reviewing court must defer to the agency so long as 'the agency's answer is based on a permissible construction of the statute.'" *Wilderness Society*, 353 F.3d at 1059 (quoting *Chevron*, 467 U.S. at 843). "In such a case an agency's interpretation of a statute will be permissible, unless [it is] 'arbitrary, capricious, or manifestly contrary to the statute.'"  *Id.* (quoting *Chevron*, 467 U.S. at 844). Accordingly, the agency's interpretation "governs if it is a reasonable interpretation of the statute - not necessarily the only possible interpretation, nor even the interpretation deemed *most* reasonable by the courts."  *Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208, 218 (2009) (emphasis in original).

Where the agency's construction of a statute is expressed in a non-precedential opinion, "[t]he fair measure of deference to an agency administering its own statute has been understood to vary with circumstances, and courts have looked to the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position." *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 139-40 (1944)) (footnotes omitted).

### IV.  ANALYSIS

Defendants contend that Plaintiff is statutorily barred from adjusting his status under 8 U.S.C. § 1255(c)(2) because he failed to maintain a lawful status between his 2003 entry into the United States without inspection and his receipt of TPS in 2012.  Plaintiff contends, on the other hand, that 8 U.S.C. § 1255(c)(2) does not bar him from adjusting his status to lawful permanent resident because he has "maintain[ed] continuously a lawful status" since his receipt of TPS in 2012.

The question presented -- whether 8 U.S.C. § 1255(c)(2) bars Plaintiff from adjusting his status to that of lawful permanent resident when he initially entered the country without inspection but was later granted TPS -- is not a matter of first impression. As further discussed below, the Court agrees with and adopts the reasoning of *Figueroa v. Rodriguez*, 2017 WL 3575284 (C.D. Cal. Aug. 10, 2017) and *Hernandez de Gutierrez v. Barr*, -- F. Supp. 3d --, 2020 WL 5764281 (D. Minn. Sept. 28, 2020, as amended Oct. 23, 2020), and concludes that, based on the unambiguous and clear statutory text of the immigration statutes, 8 U.S.C. § 1255(c)(2) does not bar adjustment of Plaintiff's status to that of lawful permanent resident.

"The starting point for [a court's] interpretation of a statute is always its language." *Cmty. for*

*Creative Non-Violence v. Reid*, 490 U.S. 730, 739 (1989) (citing *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102 (1980)). Section 1255(c)(2) precludes an alien from adjusting his status if he "has failed (other than through no fault of his own or for technical reasons) to maintain continuously a lawful status since entry into the United States." The TPS statute, however, provides that "[d]uring a period in which an alien is granted [TPS,] . . . *for purposes of adjustment of status under section 1255 of this title* . . . the alien shall be considered as being in, and maintaining, lawful status as a nonimmigrant." 8 U.S.C. § 1254a(f)(4)(emphasis added).

Section 1254a(f)(4) "explictly refers to the adjustment statute, § 1255, and confers the status of lawful nonimmigrant on TPS recipients when looking at adjusting their status." *Ramirez v. Brown*, 852 F.3d 954, 959 (9th Cir. 2017). "Section 1254a(f)(4)'s language is broad and is not limited in application to any particular provision of section 1255." *Figueroa v. Rodriguez*, 2017 WL 3575284, *4 (C.D. Cal. Aug. 10, 2017). "Section 1254a(f)(4) therefore applies to the limitation of eligibility in section 1255(c)(2), thereby foreclosing Defendants' argument that section 1255(c)(2) prevents a TPS recipient from obtaining a status adjustment." *Id.* In fact, section 1254a(f)(4)'s language mirrors Section 1255(c)(2)'s language, as both provisions refer to maintaining "lawful status." *See Ramirez*, 852 F.3d at 962. This similarity is significant because it signals that Congress expressly contemplated and intended that TPS recipients would avoid the statutory bar under § 1255(c)(2). *See Figueroa*, 2017 WL 3575284 at *5 ("[S]imilar language is used in sections 1254a(f)(4) and section 1255(c)(2), suggesting that Congress intended to allow TPS recipients to avoid section 1255(c)(2)."). Accordingly, the Court concludes that, based on the unambiguous and clear statutory text of the immigration statutes, section 1255(c)(2) does not bar adjustment of Plaintiff's status to that of lawful permanent resident.

The Court's conclusion is further supported and all but mandated by the Ninth Circuit's decision in *Ramirez v. Brown*, 852 F.3d 954 (9th Cir. 2017).[5] In that case, the Ninth Circuit concluded that § 1254a(f)(4) unambiguously treats aliens with TPS as being "admitted" for purposes of adjusting status. *Id.* at 958. And, under the plain text of the immigration statutes, an "admission" acts as a "fresh 'lawful' entry." *Hernandez de Gutierrez v. Barr*, -- F. Supp. 3d -- , 2020 WL 5764281, at *4 (D. Minn. Sept. 28, 2020, as amended Oct. 23, 2020). Indeed, pursuant to 8 U.S.C. § 1101(a)(13)(A), an "admission" is defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."[6] Thus, because Plaintiff was "admitted" on December 4, 2012 when he received TPS, he lawfully entered the United States at that time. *See Figueroa*, 2017 WL 3575284, at * 5 ("[A] TPS recipient may be considered to have entered the country upon the grant of TPS, not necessarily when physical presence in the country began."). Accordingly, Plaintiff has "maintain[ed] continuously a lawful status since entry into the United States," and is not barred from adjusting his status to that of permanent lawful

---

[5]Tellingly, in *Ramirez v. Brown*, 852 F.3d 954 (9th Cir. 2017), the Ninth Circuit suggested, and the Government argued, that the grant of TPS allows an alien to avoid the bar under section 1255(c)(2). *See* 852 F.3d at 957, 962.

[6]Although *Ramirez* rejected an interpretation of "admission" for purposes of section 1255(a) that was limited to the definition in 8 U.S.C. § 1101(a)(13)(A), *see* 852 F.3d at 960-61, the concepts of admission and entry are nonetheless linked. *Figueroa*, 2017 WL 3575284 at *5 n.3.

resident by 8 U.S.C. § 1255(c)(2).[7]

Defendants argue that the TPS statute provides that an alien is only considered as being in, and maintaining, lawful status as a nonimmigrant "*[d]uring [the] period in which [the] alien is granted temporary protected status.*"  8 U.S.C. § 1254a(f)(4) (emphasis added).  Defendants argue that the temporal limitation in § 1254a(f)(4) demonstrates that § 1254a(f)(4) does not extend retroactively to cure Plaintiff's pre-TPS period of unlawful status for purposes of § 1255(c)(2).  The Court rejects that argument.  As a district court in the District of Minnesota persuasively stated:

> Section 1254a(f)(4) lists the "benefits and status" conferred on a TPS recipient "[d]uring a period in which an alien is granted temporary protected status," and unequivocally states that "for purposes of adjustment of status under section 1255 . . . the alien shall be considered as being in, and maintaining, lawful status as a nonimmigrant."  § 1254(a)(4).  Thus, the statute's plain text makes clear that one of the benefits of attaining and maintaining TPS is that the individual will be considered to be in lawful status for all of § 1255's purposes, including § 1255(c)(2)'s requirement to "maintain continuously a lawful status since entry."  If Congress intended TPS recipients who initially entered without inspection to be unable to alter their status under § 1255, it would not have made § 1254a(f)(4) to operate as an "admission" and would not have made it applicable to the entirety of § 1255.

*Hernandez de Gutierrez v. Barr*, -- F. Supp. 3d --, 2020 WL 5764281, at *5 (D. Minn. Sept. 28, 2020, as amended Oct. 23, 2020).[8]

Accordingly, the Court concludes, at step one of *Chevron*, based on the clear statutory text, 8 U.S.C. § 1255(c)(2) unambiguously does not bar adjustment of Plaintiff's status to that of lawful permanent resident.  Accordingly, "[b]ecause the statutory language is clear, that ends the inquiry:

---

[7]Defendants argue that the Court should interpret § 1255(c)(2) as requiring Plaintiff to maintain continuously a lawful status since his *first* entry into the United States, because there is no time limitation in § 1255(c)(2) such as the "most recent entry" or the "entry immediately prior to seeking adjustment."  Defendants' suggested interpretation, however, is an unnatural reading of the plain statutory text.  Moreover, Defendants' reliance on 8 C.F.R. § 245.1(d)(3) is misplaced.  That regulation provides in relevant part: "[T]he departure and subsequent reentry of an individual who has not maintained a lawful immigration status on any previous entry into the United States does not erase the bar to adjustment of status in [8 U.S.C. § 1255(c)(2)] for any application filed on or after November 6, 1986."  8 C.F.R. § 245.1(d)(3).  "But that regulation only applies to certain individuals that have physically departed and then attempted to reenter."  *Hernendez de Gutierrez*, 2020 WL 5764281 at *4 n.4.  In this case, Plaintiff was admitted by way of TPS.

[8]The Court recognizes that the Fifth and Eleventh Circuits have reached a contrary conclusion.  See *Melendez v. McAleenan*, 928 F.3d 425, 429 (5th Cir. 2019); *Duron v. Stul*, 724 Fed. App'x 791, 794 (11th Cir. 2018).  Those circuits concluded that the benefit of lawful status under § 1254a(f)(4) is limited to the period of time that the alien has TPS, and that any earlier unlawful status constitutes a failure to "maintain continuously a lawful status since entry" under § 1255(c)(2).  The reasoning in those Fifth and Eleventh Circuit decisions, however, is inconsistent with the Ninth Circuit's reasoning in *Ramirez v. Brown*, 852 F.3d 954 (9th Cir. 2017).

the agency has no interpretive role to play but must instead follow the congressional mandate." *Ramirez*, 852 F.3d at 958.

Plaintiff was granted TPS on December 4, 2012, and he has maintained that status since that time. Despite his initial entry without inspection and unlawful presence prior to the grant of TPS, his "entry" for purposes of 8 U.S.C. § 1255(c)(2) occurred on December 4, 2012. Accordingly, because he has maintained continuously a lawful status since his "entry" into the United States on December 4, 2012, he is not barred from adjusting his status under 8 U.S.C. § 1255(c)(2).  Thus, the Court concludes that Defendants' decision denying Plaintiff's adjustment of status is arbitrary, capricious, and contrary to law and must be vacated and set aside.

## V.     CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is **GRANTED**. Defendants' Motion for Summary Judgment is **DENIED**.  The Court therefore **REMANDS** the case to USCIS for adjudication consistent with this order.

Plaintiff and Defendants are ordered to meet and confer and prepare a joint proposed Judgment which is consistent with this Order. The parties shall lodge the joint proposed Judgment with the Court on or before **December 7**, **2020**. In the unlikely event that counsel are unable to agree upon a joint proposed Judgment, the parties shall each submit separate versions of a proposed Judgment, along with a declaration outlining their objections to the opposing party's version, no later than **December 7, 2020**.

IT IS SO ORDERED.